718 So.2d 646 (1998)
Daniel R. KNIGHT, M.D., Plaintiff-Appellee,
v.
STATE of Louisiana, Louisiana State Medical Center, Shreveport and Betty Johnson In Solido, Defendants-Appellants.
No. 30902-CA.
Court of Appeal of Louisiana, Second Circuit.
September 28, 1998.
*647 Taylor, Porter, Brooks & Phillips by Thomas R. Peak, Baton Rouge, for Defendants-Appellants.
Rice & Kendig by William F. Kendig, Shreveport, for Plaintiff-Appellee.
Before MARVIN, C.J., and STEWART and PEATROSS, JJ.
STEWART, Judge.
LSU Medical Center appeals the judgment of the trial court awarding plaintiff the amount of $7500 plus legal interests from the date of judicial demand and all costs. We affirm.

FACTS
On May 25, 1996, an indigent minor patient arrived at LSU Medical Center for treatment of two severed fingers on his left hand. Dr. Carl Bilderback, a member of the emergency faculty at LSU Medical Center, contacted Dr. Steven Atchison and reported admission of the patient and his condition. As replantation[1] and reattachment of the injured fingers was a viable, and the preferred, course of treatment, Dr. Steven Atchison, a physician at LSU Medical Center, first telephoned Betty Johnson, LSU Medical Center administrator on call that evening, for authority to contact surgeons outside LSU Medical Center and to clear payment for surgery. Ms. Johnson approved contacting another surgeon and offering payment for services.
Dr. Atchison then contacted Dr. Daniel Knight, a plastic and reconstructive surgeon on call at Schumpert Medical Center. Dr. Daniel Knight referred Dr. Atchison to Dr. John Knight, plaintiff's brother and an orthopedic hand surgeon, who is head of the replantation service at Schumpert. Dr. Atchison advised Dr. John Knight of the patient's condition and that he had spoken to Betty Johnson, LSU Medical Center administrator, who authorized payment of fees for performing the surgery. Dr. John Knight indicated that the surgery would be performed at Schumpert because he had a surgical team available at Schumpert.
After Dr. John Knight arranged for transfer of the patient to Schumpert, he then spoke to Dr. Bilderback requesting the name and contact number of the administrator on call that evening. Dr. John Knight contacted Ms. Johnson, advising her that a surgical team, including an anesthesiologist and a micro vascular surgeon, would assist him with the procedure. Ms. Johnson confirmed that LSU Medical Center would pay surgical fees.
*648 Arrangements were made for submission of the bills for services. The patient was transported from LSU Medical Center to Schumpert Medical Center where surgery was performed by both Dr. John Knight and Dr. Dan Knight.
Subsequently, bills for reimplantation and reattachment were submitted to Ms. Johnson at LSU Medical Center. LSU Medical Center failed to honor the bills when they were presented for payment. Dr. John Knight filed suit against LSU Medical Center. Judgment was rendered against LSU Medical Center on behalf of Dr. John Knight. A renewed demand for payment was made on behalf of Dr. Daniel Knight. Upon payment again being refused by LSU Medical Center, Dr. Daniel Knight filed this action.
In written reasons for decision, Judge Scott Crichton found that the elements of recovery under La. C.C. art.1967, detrimental reliance, were established and rendered judgment in favor of Dr. Daniel Knight. LSU Medical Center appeals and assigns two errors: (1) the trial court erred in concluding that the requirements for recovery pursuant to La. C.C. art.1967 were satisfied, and (2) the trial court erred in concluding that a promise to guarantee payment for services rendered to another did not constitute a suretyship, which requires a written agreement to be enforceable.

DISCUSSION
An appellate court may not set aside a trial court's findings of fact in the absence of clear or manifest error. Lewis v. State, Through DOTD, 94-2370 (La.4/21/95), 654 So.2d 311; Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989); Thompson v. Coates, 29,333 (La.App. 2nd Cir. 5/7/97), 694 So.2d 599. To reverse a trial court's factual determinations, a court of appeal must find, based on the record, that no reasonable factual basis for the findings exists and that the findings are clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La.1987); Thompson v. Coates, supra. The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Lewis v. State, Through DOTD, supra; Stobart v. State, Through DOTD, supra; Lebeaux v. Newman Ford, 28,609 (La.App. 2nd Cir. 9/25/96), 680 So.2d 1291; Dismuke v. Quaynor, 25,482 (La.App. 2nd Cir. 4/5/94), 637 So.2d 555, writ denied, 94-1183 (La.7/1/94), 639 So.2d 1164.
The fact finder's choice between two conflicting permissible views of the evidence "cannot be" manifestly wrong. Stobart v. State, Through DOTD, supra. The duty of the fact finder is to evaluate the credibility when testimony is conflicting and to accept or reject any part of a witness' credibility. Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (La.5/22/95), 655 So.2d 309. Where the testimony conflicts, the fact finder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review by the appellate court. Rosell v. ESCO, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

Detrimental reliance
LSU Medical Center asserts that plaintiff failed to prove the elements of La. C.C. art.1967. That provision requires proof that a promise was made, that plaintiff reasonably relied on the promise, and that plaintiff changed his position to his detriment. LSU Medical Center notes that reliance on a gratuitous promise absent the required formalities is not reasonable. See La. C.C. art.1967. First, LSU Medical Center contends that, as the alleged promise was gratuitous, Dr. Dan Knight was not reasonable in relying on such promise. Second, LSU Medical Center asserts that, even if a promise made by LSU Medical Center existed, Dr. Dan Knight failed to establish both reasonable reliance on the promise and a change to his detriment.
La. C.C. art.1967 provides:
Art.1967. Cause defined; detrimental reliance
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery *649 may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
Comment (d) to La. C.C. art.1967 states that "a promise becomes an enforceable obligation when it is made in a manner that induces the other party to rely on it to his detriment."
The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. Orr v. Bancroft Bag, Inc., 29,046 (La.App. 2nd Cir. 1/22/97), 687 So.2d 1068; Andrus v. Andrus, 93-856 (La.App. 3rd Cir. 3/2/94), 634 So.2d 1254. To recover under a theory of detrimental reliance, plaintiff must prove three elements: a representation by conduct or work; justifiable reliance thereon; and a change of position to one's detriment because of the reliance. John Bailey Contractor, Inc. v. State, DOTD, 439 So.2d 1055 (La.1983); Orr v. Bancroft Bag, Inc., supra; Andrus v. Andrus, supra. Reliance on a gratuitous promise is unreasonable or unjustified absent required formalities. Kibbe v. Lege, 604 So.2d 1366 (La.App. 3rd Cir. 1992).
To recover, Dr. Dan Knight must have established: (1) that LSU Medical Center, through Ms. Johnson or Dr. Atchison made representations upon which Dr. Dan Knight relied; (2) that his reliance was justified; and (3) that this reliance detrimental to Dr. Dan Knight.
Initially, we note the record reflects that, prior to any contact with either Dr. Dan Knight or Dr. John Knight, Dr. Atchison contacted Ms. Johnson, informed her that LSU Medical Center lacked the necessary staff and facilities to perform reimplantation and reattachment surgery, and requested permission to contact surgeons not associated with LSU Medical Center and to offer payment for such surgeons services. Ms. Johnson told Dr. Atchison to make the necessary arrangements and that LSU Medical Center "could take care of it."
The record evidence established that both Ms. Johnson and Dr. Atchison communicated to Dr. John Knight a promise to pay fees incurred for surgery on the minor patient and that this promise to pay was not conditioned on the minor patient's eligibility for Medicaid. More importantly, the testimony evidenced that Dr. Atchison indicated to Dr. Dan Knight that LSU Medical Center would pay for treatment of the minor patient. Further, both Ms. Johnson and Dr. Atchison testified that they understood that the reimplantation and reattachment procedure would be performed by a team, including two surgeons. The record reflects that Dr. Dan Knight performed the five-hour reimplantation and reattachment surgery with his brother, Dr. John Knight, and that Dr. Dan Knight was never paid for his services. Clearly, the record supports the trial court's findings that LSU Medical Center promised to pay Dr. Dan Knight for his services and that he relied on that promise to his detriment.
Additionally, LSU Medical Center argues that the alleged promise was gratuitous and that, therefore, Dr. Dan Knight's reliance on said promise was unreasonable absent formalities. A gratuitous contract is defined as a contract in which "one party obligates himself towards another for the benefit of the latter, without obtaining any advantage in return." La. C.C. art.1910. Although LSU Medical Center may not have received any direct advantage, we find that LSU Medical Center did derive a substantial benefit from its effective and prompt action which assured high caliber surgical treatment for this indigent child. Adequate record evidence supports a finding that the promise was not gratuitous and that Dr. Dan Knight's reliance on LSU Medical Center's promise was reasonable.
Consequently, we conclude that the trial court did not err in rendering judgment based on the doctrine of detrimental reliance. This assignment is without merit.
Suretyship
LSU Medical Center asserts that any guarantee of payment by LSU Medical Center for services rendered to the patient constitutes a suretyship which must be formalized *650 in writing to be enforceable. See La. C.C. art. 3035, et seq. LSU Medical Center argues that Dr. Dan Knight provided services to the patient and not defendants, that defendants had no obligation to provide reimplantation or reattachment treatment to the patient, and that the patient and his parents are obligated to pay the medical bills for service provided by Dr. Dan Knight.
Even were we to conclude that the promise to pay Dr. Dan Knight was gratuitous, we do not consider LSU Medical Center a surety pursuant to La. C.C. arts. 3035, et seq.
La. C.C. art. 3037 provides, in pertinent part:
One who ostensibly binds himself as a principal obligor to satisfy the present or future obligations of another is nonetheless considered a surety if the principal cause of the contract with the creditor is to guarantee performance of such obligation.

* * * * * *
A promissor becomes primarily responsible for a debt if he unconditionally obligates himself to pay the debt of another. Such a promise does not create a suretyship and would not require proof by written instrument but could be proved by parol evidence. La. C.C. art. 1846; Nesser, King & LeBlanc v. Laredo Marine Services, Inc., 93-1222 (La.App. 4th Cir. 1/13/94), 630 So.2d 327. See also Leake & Andersson, L.L.P. v. Loo-Hernandez, 97-1077 (La.App. 4th Cir. 12/10/97), 704 So.2d 924. Additionally, if the promise is made from the pecuniary or business motives of the promissor and not made primarily to answer for another, then promissor binds himself as a principal and a written instrument is unnecessary to prove the obligation. Leake & Andersson, L.L.P. v. Loo-Hernandez, supra; Marmedic, Inc. v. International Ship Management & Agency Services, Inc., 425 So.2d 878 (La.App. 4th Cir. 1983).
The testimony of Ms. Johnson, Dr. Atchison, Dr. John Knight, and Dr. Dan Knight consistently reflects that the promise by LSU Medical Center to pay Dr. Dan Knight was unconditional and not contingent upon the patient's qualification for Medicaid or his parents' ability or failure to pay medical expenses. Further, the record reflects that the bill was not submitted to the patient's parents or to Medicaid but was sent directly to LSU Medical Center to the attention of Ms. Johnson.
Considering the record evidence, we conclude that the trial court did not err in finding that the offer by LSU Medical Center to pay medical expenses incurred by the minor patient did not constitute a suretyship. This assignment is without merit.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Surgical reattachment of a traumatically severed limb.