756 So.2d 1201 (2000)
Amy L. HARING, Plaintiff-Appellee,
v.
Robin C. STINSON, Defendant-Appellant.
No. 32,785-CA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 2000.
*1202 Charles R. Joiner, West Monroe, Counsel for Appellant.
Vicki Kemp Cruse, Rayville, Counsel for Appellee.
Before BROWN, STEWART and DREW, JJ.
STEWART, J.
The plaintiff, Amy Haring, sued the defendant, Robin Stinson, seeking damages for reimbursement for certain expenses she allegedly incurred in improving Ms. Stinson's house and for certain expenses she incurred after a failed attempt by the parties to enter into a joint venture for the operation of a "cattery" business. Ms. Haring's cause of action was for a breach of contract and, in the alternative, the theory of unjust enrichment. The trial court awarded judgment in favor of Ms. Haring in the amount of $21,113.14 less a credit of $3,000.00. We hereby affirm.

FACTS/PROCEDURAL HISTORY
Amy Haring and Robin Stinson, who were friends and also worked together as legal secretaries at a law firm, attempted to enter into a joint venture to establish and operate a "cattery" business for the purpose of breeding and grooming show cats. Several proposals were discussed by and between the parties about how the joint venture would function. A floor plan was drawn up for the construction of a proposed cattery addition to the Ms. Stinson's home. Before Ms. Haring and the defendant reached a written agreement on how the cattery business would function and how the parties would share responsibilities, Ms. Haring, along with Ms. Stinson's consent, provided the funds to construct an addition to Ms. Stinson's home. Construction on the addition began in the latter part of 1996. After completion in the early part of 1997, it became incorporated in and attached to Ms. Stinson's home and, thus, became a component part of Ms. Stinson's immovable property. The *1203 cattery addition is composed of a small room used for bathing and grooming cats and kittens and a larger room where the felines were to be housed. The stud cats were to be separated from the female cats in the larger room by virtue of four built-in screened cages or closet areas.
After completion of the addition to Ms. Stinson's home, the parties were unable to agree on the terms, conditions, and obligations each of them would have in the proposed joint venture. As a result, both parties became frustrated and eventually the two women parted ways.
Ms. Haring filed a petition for damages on September 12, 1997, seeking judgment against Ms. Stinson for $21,613.14 plus legal interest and all costs, subject to a credit of $3,000.00. Furthermore, Ms. Haring sued under a theory of unjust enrichment asserting that Ms. Stinson benefitted from a $20,000.00 addition to her home in connection with the attempted joint venture. Ms. Stinson filed an answer and reconventional demand seeking recovery of $16,465.00 plus legal interest for the costs of boarding, feeding, grooming and other services provided to four cats which were claimed to have been owned by Ms. Haring.
In making its determination, the trial court considered the equitable doctrines of unjust enrichment, equitable estoppel, and quantum meruit. The trial court filed written reasons for judgment and, based on a theory of unjust enrichment, awarded judgment in favor of Ms. Haring in the amount of $21,113.14 less a credit of $3,000.00. Ms. Stinson now appeals this adverse judgment.

DISCUSSION
By assignment of error, Ms. Stinson, the appellant, contends that the trial court committed manifest error in awarding judgment in favor of Ms. Haring on the basis of unjust enrichment. Essentially, appellant argues that under La. C.C. art. 495, Ms. Haring should be required to remove the addition to her home at Ms. Haring's expense and restore the property to its former condition at no costs to appellant. Alternatively, appellant contends that she does not owe Ms. Haring anything because Ms. Haring has failed to prove that her property has been enriched or has benefitted by the construction of the cattery addition, which is required by the equitable doctrines Ms. Haring is seeking to have applied in this case.
An appellate court may not set aside a trial court's findings of fact in the absence of clear or manifest error. Lewis v. State, Through DOTD, 94-2370 (La.4/21/95), 654 So.2d 311; Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993); Rosell v. ESCO, 549 So.2d 840 (La. 1989); Thompson v. Coates, 29,333 (La. App.2d Cir.5/7/97), 694 So.2d 599. To reverse a trial court's factual determinations, a court of appeal must find, based on the record, that no reasonable factual basis for the findings exists and that the findings are clearly wrong and manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La. 1987); Thompson v. Coates, supra. The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Lewis, supra; Stobart, supra; Lebeaux v. Newman Ford, 28,609 (La.App.2d Cir.9/25/96), 680 So.2d 1291; Dismuke v. Quaynor, 25,482 (La.App.2d Cir.4/5/94), 637 So.2d 555, writ denied, 94-1183 (La.7/1/94), 639 So.2d 1164.
The fact finder's choice between two conflicting permissible views of the evidence "cannot be" manifestly wrong. Stobart, supra. The duty of the fact finder is to evaluate the credibility when testimony is conflicting and to accept or reject any part of a witness' credibility. Welch v. Winn-Dixie Louisiana, Inc., 94-2331 *1204 (La.5/22/95), 655 So.2d 309. Where the testimony conflicts, the fact finder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review by the appellate court. Rosell v. ESCO, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The trial court's determination is justified by both the doctrines of equitable estoppel and unjust enrichment.

Equitable Estoppel
The doctrine of equitable estoppel is codified in La. C.C. art.1967 which states:
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
The Louisiana Supreme Court defined equitable estoppel in Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975) as follows:
Equitable estoppel, or `estoppel in pais', can be defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance. Thus, there are three elements of estoppel: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance.
The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. Knight v. State, 30,902 (La.App.2d Cir.9/28/98), 718 So.2d 646; Orr v. Bancroft Bag, Inc., 29,046 (La.App.2d Cir.1/22/97), 687 So.2d 1068; Andrus v. Andrus, 93-856 (La.App. 3d Cir.3/2/94), 634 So.2d 1254.
In this case, the questions to be answered are: (1) whether the appellant made representations to Ms. Haring on which Ms. Haring relied; (2) whether Ms. Haring's reliance on these representations was justifiable; and (3) whether this reliance worked to Ms. Haring's detriment.
The record reveals that the appellant did discuss with Ms. Haring the possibility of entering into a joint venture for the purposes of showing, breeding, and marketing cats and kittens. The appellant testified that her role in the business was to be her knowledge, reputation in the cat world, experience, and "of course, the kitty, the cats." The trial court observed the witnesses at the trial and determined the appellant had made such a representation. Since the trial court is in the best position to evaluate the credibility of witnesses, we give great weight to the trial court's factual conclusions that such representations by appellant were made to Ms. Haring. Rosell v. ESCO, supra.
We also believe that Ms. Haring's reliance upon these representations is shown by her provision of funds for the construction of the cattery addition to appellant's house. Furthermore, as noted by the trial court, it also appears that Ms. Haring's reliance worked to her detriment since she spent some $19,116.65 constructing an addition to appellant's house for which she has received very little, if any benefit.
Thus, the main issue is whether or not Ms. Haring was justified in her reliance upon appellant's representations. We believe that Ms. Haring's reliance was justified for several reasons. First, both appellant and Ms. Haring had entered detailed discussions regarding the proposed joint *1205 venture, setting forth each person's general responsibilities and discussing how the joint venture would function. The evidence shows that James Stephens, the employer of both appellant and Ms. Haring, sat down with the two women on several occasions to discuss the joint venture and he assisted in drawing up a floor plan for the construction of the proposed cattery addition to appellant's home. In addition to their verbal discussions, at least two different joint venture agreements were prepared in the law office where appellant, Ms. Haring and Stephens worked. However, neither written agreement was ever executed by either party. Second, discussions as to the proposed joint venture rose to a level that was significant enough to cause Ms. Haring to acquiesce in providing funds for the construction of the cattery addition to appellant's house. While we concede that Ms. Haring's reliance on the representations made by appellant were arguably premature, since a written joint venture agreement was never reached between the parties, we are convinced that Ms. Haring's reliance was justified under the circumstances. As such, we agree with the trial court's determination that the doctrine of equitable estoppel is applicable in this case.

Unjust Enrichment
The doctrine of unjust enrichment is found in La. C.C. art. 2298 which states, in pertinent part, the following:
A person who has been enriched without cause at the expense of another person is bound to compensate that person.
In Baker v. Maclay Properties Co., 94-1529 (La.01/17/95), 648 So.2d 888, the Louisiana Supreme Court reiterated the five requirements for a showing of unjust enrichment: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) there must be no other remedy at law available to plaintiff.
First, Ms. Haring must show that appellant was enriched. The record evidences that the cattery addition to appellant's home could be used as a bedroom, pantry, utility room, den, storage room, or wash room. Based on the testimony of several witnesses and the trial court's own observations of the premises in question, the record reflects that the property's value was enhanced by the addition. Second, Ms. Haring must show that she was impoverished. Clearly, an impoverishment has occurred here because Ms. Haring has spent some $19,116.65 to construct the addition. There is also a causal connection between the enrichment and the impoverishment here whereby Ms. Haring's purchase of the materials and payment of labor costs resulted in the enrichment appellant received in the form of a valuable addition to her home. Furthermore, there exists no other cause for the enrichment and impoverishment. Finally, we believe that under the circumstances, the only remedy available to Ms. Haring lies within the confines of equitable principles.
La. C.C. art. 495 states the following:
One who incorporates in, or attaches to, the immovable of another, with his consent, things that become component parts of the immovable under Articles 465 and 466, may, in the absence of other provisions of law or juridical acts, remove them subject to his obligation of restoring the property to its former condition.
If he does not remove them after demand, the owner of the immovable may have them removed at the expense of the person who made them or elect to keep them and pay, at his option, the current value of the materials and of the *1206 workmanship or the enhanced value of the immovable.
We agree with the trial court's interpretation of La. C.C. art. 495:
[A] strict reading of LSA-C.C. art. 495 leads this Court to believe that the person making the improvements with the owner's consent has the option, not the duty, to remove them subject to the obligation of restoration. Removal of the improvements is only mandatory if the owner demands same. If the owner does not demand removal, LSA-C.C. art. 495 does not appear to require the person making the improvements to take any further affirmative action regarding the improvements. If he does not remove them after demand by the owner, then the owner may remove them at the other party's expense.
Here, Ms. Haring chose not to remove the improvements. Appellant made no attempt prior to trial or in her pleadings to require Ms. Haring to remove the cattery addition or to remove the addition herself at Ms. Haring's expense, as authorized by La. C.C. art. 495. Under the provisions of this article and under the equitable doctrines we have discussed, we must assume that appellant has chosen to keep the cattery addition on her house. See Kibbe v. Lege, 91-233 (La.App. 3d Cir.7/8/92), 604 So.2d 1366, writ denied, 92-C-2304 (La.11/6/92), 606 So.2d 541 and Andrus v. Andrus, 93-856 (La.App. 3d Cir.3/2/94), 634 So.2d 1254.
Also, there is no way that Ms. Haring could restore the structure to its pre-improved condition. The record clearly indicates that demolition of the property is not a viable option in this case because it would cause irreparable damage to the structure. Therefore, as determined by the trial court, Ms. Haring is entitled to recovery based on equitable principles in order to prevent an unjust enrichment on the part of the appellant. We find that appellant's assignment of error is without merit.

CONCLUSION
For the reasons just discussed, we affirm the trial court's judgment. Costs of this appeal are assessed to the appellant.
AFFIRMED.