732 So.2d 1256 (1999)
Gene O. NORTON, Plaintiff-Appellant,
v.
CLAIBORNE ELECTRIC CO-OP, INC., et al., Defendants-Appellees.
No. 31,886-CA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
Rehearing Denied June 3, 1999.
*1257 Barham, Adkins & Tatum by T.J. Adkins, Ruston, Counsel for Appellant.
Lunn, Irion, Johnson Salley & Carlisle, by Brian D. Smith, Shreveport, Counsel for Appellee Claiborne Electric Co-op., Inc.
Dawkins, Coyle & Carter by Robert G. Dawkins, Ruston, Counsel for Appellee Trees, Inc.
Kent B. Payne, Baton Rouge, Counsel for Intervenor Louisiana Workers Compensation Corp.
Before NORRIS, WILLIAMS and GASKINS, JJ.
GASKINS, Judge.
The plaintiff, Gene O. Norton, appeals from a trial court ruling which granted summary judgment in favor of Claiborne Electric Cooperative, Inc. and Trees, Inc., dismissing the plaintiffs personal injury claims, arising from being struck by a falling tree. For the following reasons, we reverse and remand to the trial court for further proceedings.

FACTS
In 1994, Claiborne Electric Cooperative, Inc. (CE) obtained a permit from the State of Louisiana, through the Department of Transportation, to use the highway right of way to reroute power lines. CE had a contract with Trees, Inc. (Trees) to cut trees from the right of way. CE contracted with the plaintiff, Gene Norton, to clean up limbs and brush from a portion of the right of way after the trees were cut by Trees. On October 12, 1994, the plaintiff contends that he was working on the right of way with his crew which included Mack Bailey, Wilson Bailey, and Ray Lee Bailey. The plaintiff alleges that, as he was cleaning the filter on a chain saw, a tree suddenly fell and struck him, causing serious injury. He claims that the tree had been partially cut and left standing by Trees. According to the plaintiff, he suffered rib fractures, a left hemothorax, and back injuries, which required hospitalizations and numerous surgical procedures.
*1258 On October 6, 1995, the plaintiff filed suit for damages, naming as defendants, CE, Trees, and the landowner of the adjoining property, C. Hood. The plaintiff sought to recover on theories of negligence and strict liability. He alleged that the defendants were negligent in partially cutting the tree and then failing to warn of the condition of the tree. The plaintiff also claimed that the defendants were strictly liable for his damages because they had "garde" of the tree which fell and injured him. On November 16, 1995, the Louisiana Workers' Compensation Corporation filed a petition of intervention to recover for workers' compensation benefits paid to the plaintiff.
CE and Trees then each filed motions for summary judgment. CE claimed it was undisputed that it had been granted use of the state's right of way (ROW) on August 2, 1994 and had not obtained any additional ROW from the owners of adjoining private property. CE also admits that it hired Trees to cut trees on the ROW, as well as contracting with the plaintiff on September 26, 1994 to clean up after Trees. CE noted that the plaintiff claimed that the tree which fell was located on the ROW. CE then attached exhibits to its motion for summary judgment showing that the tree in question was not located on the ROW and that CE did not have garde, custody, care or control over the purported partially cut tree, and therefore could not be strictly liable for the plaintiff's injury. CE also contended that the plaintiff offered no evidence to substantiate that any employee, agent, or representative from CE cut the tree or that CE retained the services of any contractor, including Trees, to cut the tree which allegedly fell on the plaintiff. Therefore, CE contended that the plaintiff's negligence claim should fall. Similarly, in its motion for summary judgment, Trees argued that the plaintiff presented no proof that the company cut the tree, which was outside the ROW. It denied that it had custody or garde of the tree.
In response to the motions, the plaintiff sought to show, through circumstantial evidence, that an employee of Trees, working for CE, must have partially cut the tree. Therefore, he claims that he was able to support his claim of negligence. The plaintiff further argued that CE and Trees were strictly liable, contending that the offending tree was on CE's ROW. The plaintiff asserted that a guy wire had been installed on the property of an adjoining landowner, thus extending the ROW under the St. Julien doctrine,[1] to include the land on which the tree had been growing. By application of the St. Julien doctrine, the plaintiff argued that the tree which caused his injury was actually on the ROW and under the care, custody and control of CE.
Arguments on the motions for summary judgment were held on November 10, 1997. The trial court took the matter under advisement. On March 13, 1998, the trial court signed written reasons for ruling in favor of CE and Trees, granting their motions for summary judgment.[2]
The trial court found that the decision whether to grant or deny summary judgment in this case turned upon a finding of whether CE or Trees ever had the garde, custody or control of the tree in question. The court found that concrete markers established the location of the ROW and between these markers and the tree is a *1259 barbed wire fence. The trial court discounted the plaintiffs argument that circumstantial evidence established that an employee or representative of Trees and/or CE cut the tree and left it standing. The court found that the plaintiff produced no evidence that any employee, agent, or representative of CE cut the tree or that CE contracted with anyone else, including Trees, to cut the tree in question here. The court noted that the plaintiff argued that only Trees was responsible for cutting in the area. However, statements from the plaintiffs fellow workers showed that members of the plaintiffs crew may have cut trees in the area. According to the trial court, one of the plaintiffs co-workers stated that the cut on the disputed tree was one week old. Trees was not in the area the week before the accident. The court found that CE and Trees owed no duty to the plaintiff because the tree which fell on the plaintiff simply was not on the ROW and therefore, CE did not have the garde of that particular tree. The court noted that CE and Trees presented depositions and affidavits to establish that the disputed tree was not on the ROW, that CE did not obtain additional ROW from adjacent landowners and that no one was instructed to cut, or actually did cut, the tree at issue in this case.
The trial court discounted the plaintiffs argument that the St. Julien doctrine applies to this case to expand the ROW to include this particular tree. The court found that the guy wire was not placed on the adjoining property until after Trees completed its work. Therefore, even if the ROW was expanded, that did not occur until after Trees finished working in the area.
Noting that the plaintiff could point to no factual evidence indicating who cut the tree or when, and that the plaintiff could not establish that CE or Trees had garde or responsibility over the area in which the tree was located, the court concluded that the plaintiff failed to produce factual support sufficient to establish that he will be able to satisfy his burden of proof at trial. Therefore, the court found that there were no genuine issues of material fact in this case regarding CE and Trees. A ruling granting summary judgment in favor of CE and Trees, and dismissing the plaintiffs claims against these two defendants, was filed by the trial court on April 28, 1998. The summary judgment was certified as a partial final judgment by the trial court on June 23, 1998. The plaintiff appealed the trial court judgment.

SUMMARY JUDGMENT
The plaintiff argues that the trial court erred in granting summary judgment in favor of CE and Trees. He contends that circumstantial evidence is sufficient to defeat a motion for summary judgment. He claims he presented sufficient circumstantial evidence to establish that Trees, working for CE, cut the tree in question here. The plaintiff further argues that the trial court, in considering these motions for summary judgment, improperly reached determinations regarding credibility and weight of evidence. The plaintiff argues that the trial court erred in failing to apply the St. Julien doctrine to this case to find that the ROW had been extended to include the area where the tree was standing. After reviewing the record before us, we conclude that the trial court erred in granting summary judgment in this case.

Legal Principles
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Ebarb v. Guinn Bros. Inc., 31,426 (La.App.2d Cir.1/20/99, 728 So.2d 487). Recent amendments to La. C.C.P. art. 966 were intended to bring our procedure more closely into line with the Federal standard. Hayes v. Autin, 96-287 (La. App. 3d Cir.12/16/96), 685 So.2d 691, writ denied 97-0281 (La.3/14/97), 690 So.2d 41. The amendments are, of course, purely *1260 procedural and subject to retroactive application. Goodrich v. Caterpillar Inc., 30,762 (La.App.2d Cir.8/19/98), 717 So.2d 1235.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file together with affidavits, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Ledent v. Guaranty National Insurance Company, 31,346 (La. App.2d Cir.12/28/98), 723 So.2d 531.
The burden of proof remains with the movant. La. C.C.P. art. 966(C)(2). The law relieves a movant from having to negate all essential elements of the non-movant's claim on which the non-movant will bear the burden of proof at trial. Instead, the movant need only point out to the court an absence of factual support for one or more of the non-movant's essential elements. Talley v. State, 31,367 (La. App.2d Cir.12/9/98), 722 So.2d 390.
When a motion is made and supported as required under La. C.C.P. art. 966, however, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response must set forth specific facts showing a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967; Ledent v. Guaranty National Insurance Company, supra. Circumstantial evidence may establish the existence of a genuine issue of material fact. Lyons v. Airdyne Lafayette, Inc., 563 So.2d 260 (La.1990). Appellate review of summary judgment is de novo, utilizing the same criteria that guide the trial court's grant of the judgment. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152.
La. C.C. art. 2315 provides in pertinent part that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. If the act involves the failure to exercise reasonable care, it is deemed negligence. In order to prevail on a negligence claim, a plaintiff has the burden of proving that (1) the defendant had a duty to conform his conduct to a specific standard, (2) the defendant failed to do so, (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries, (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries, and (5) actual damages to the plaintiff occurred. A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. This is a legal issue for the court to decide. Meany v. Meany, 94-0251 (La.7/5/94), 639 So.2d 229; Banks v. State Farm Insurance Company, 30,868 (La. App.2d Cir.8/19/98), 717 So.2d 687.
A plaintiff, seeking to recover under the theory of strict liability set forth in La. C.C. art. 2317, must prove by a preponderance of the evidence that: (1) the thing which caused his damage was in the custody of the defendant; (2) the thing had a condition that created an unreasonable risk of harm; and (3) the defective thing caused the plaintiffs injuries. Banks v. State Farm Insurance Company, supra.[3]
*1261 Although the question of whether a defendant's conduct constituted negligence is usually inappropriate for disposition by summary judgment, a defendant is entitled to dismissal under this procedure if the record is devoid of any suggested basis to impose liability on the defendant after the plaintiff was granted adequate time to develop its case by discovery. Banks v. State Farm Insurance Company, supra.
The owner of property may be held liable to a person injured on his property under a theory of negligence if there is a defect on the property which causes the injury and the owner knew or should have known of the existence of the defect. La. C.C. art. 2315; Oster v. Department of Transportation and Development, 582 So.2d 1285 (La.1991). When a plaintiff brings a suit under both negligence and strict liability theories, for relief from damages resulting from a dangerous condition on land, the analysis used by courts when applying the two theories is similar. Under either theory, the plaintiff must prove (1) the thing which caused the damage was in the custody of the defendant; (2) the thing contained a "defect" (i.e., it had a condition that created an unreasonable risk of harm to the plaintiff); and (3) the "defective" condition of the thing caused the plaintiff's injuries. Oster v. Department of Transportation and Development, supra.

Discussion
The plaintiff, in his petition, raised the theories of negligence and strict liability in support of his claim that CE and Trees were responsible for cutting the tree. Regarding both claims, the plaintiff initially argued that the tree was located on CE's ROW and therefore CE and its contractor, Trees, were liable for the defective condition located on the property. However, it was shown that the tree was some six feet off the ROW. The plaintiff also argued that the ROW should have been extended by virtue of the St. Julien doctrine. We find that the trial court was correct in refusing to employ the St. Julien doctrine to extend the ROW in this case. That doctrine requires a showing that a utility company has used private property in the public interest and in good faith, with the landowner's consent and acquiescence, for a period of time. La. R.S. 19:14. The plaintiff argues application of the doctrine because a guy wire was placed off the ROW, and near the tree. However, there has been no showing that CE had the landowner's consent or acquiescence for a period of time. Therefore, the court correctly concluded that the tree was not under the garde of CE or Trees because it was not on CE's ROW.
The court also concluded that negligence theories did not apply in this case because the tree was not on property over which CE had custody or control. We find this analysis to be erroneous. Even though the jurisprudence requires that, in order to recover against a landowner for a defective condition on his property, the thing which caused the damage be in the custody of the defendant, such a showing is not necessary to demonstrate that CE or Trees were simply negligent in cutting a tree and leaving it standing where it could fall and cause damage. The documents attached in support and in opposition to the motions for summary judgment show that the tree was approximately six feet off the ROW. A plat of the area attached to the plaintiffs opposition to the motion for summary judgment shows that the tree was located in an area in which the ROW is not straight and the width cuts back sharply.
This document is contradicted by the affidavit of Larry Massie, an employee of Trees, who supervised that company's work for CE. Mr. Massie attested that the tree which fell was in the area of the work done by Trees for CE, however, he claimed that the tree was off the ROW and behind a fence. He stated that neither he nor any of his crew crossed the fence to cut the tree at issue here.
*1262 Dennis Drummond, the administrative assistant with CE, stated in his deposition that he was in charge of clearing the ROW and installing new power lines and poles. CE had an ongoing contract with Trees for tree trimming and cutting. He said that he did not tell anyone with Trees what the width of the ROW was. He stated that Trees was to cut no further than fifteen feet away from the line, but not outside the road ROW. According to Mr. Drummond, the ROW was marked with concrete markers that were easily visible. He claimed that there was a fence in the area where this accident occurred. Mr. Drummond stated that if Trees cut outside the ROW, other contractors would have informed him. However, he stated that he only went to the area on a couple of occasions to check on the progress of the work. Mr. Drummond said that, as far as he knew, Trees was the only entity involved with cutting Trees for CE in the area where the accident occurred.
Jerry D. Williams, the general manager at CE, stated in his deposition that the electric company had no servitude agreement with the owner of the land where this tree was located. Mr. Williams stated that CE had an ongoing contract with Trees to trim and cut trees on the ROW. CE contracted with the plaintiff and with another individual, Huey Stevenson, to clean up after Trees cut the trees in the area. According to Mr. Williams, no one other than Trees should have been cutting in the area. Mr. Williams also had no personal knowledge that the contractor who installed the power poles and lines cut any trees in the area.
Ray Lee Bailey, a member of the plaintiffs work crew, stated in his deposition that the tree which fell on the plaintiff had been cut a while. He merely guessed that the cut was one week old. He said that the part that had been cut had changed color.
Mack Bailey, also a member of the plaintiff's work crew, stated in his deposition that the cut on the tree was an old one, that he did not remember a barbed wire fence in the area and that their crew cut only bushes and not trees.
Wilson Bailey, the final member of the crew working with the plaintiff on the day of the accident, gave a deposition stating that the tree which fell on the plaintiff was half dead and half green. He also stated that the crew would occasionally cut a tree if they encountered a bad one.
After reviewing the motions for summary judgment, we find that there is a genuine issue of material fact as to whether Trees, working for CE, partially cut the tree at issue here and left it standing. Circumstantial evidence that supports the plaintiff's case includes proof that the tree was close to the ROW, that the ROW narrowed rapidly where the tree was located, and that Trees was under contract with CE to clear trees from the area. Therefore, there is circumstantial evidence from which one could reasonably infer that Trees, working for CE, cut the tree in question. Because a genuine issue of material fact remains, summary judgment as to CE and Trees is not appropriate. The trial court ruling granting summary judgment in favor of CE and Trees is reversed.

CONCLUSION
For the reasons stated above, we reverse the trial court decision granting summary judgment in favor of Claiborne Electric Cooperative, Inc. and Trees, Inc., The matter is remanded to the trial court for further proceedings. Costs are assessed to the defendants, Claiborne Electric Cooperative, Inc. and Trees, Inc.
REVERSED AND REMANDED.

APPLICATION FOR REHEARING
Before NORRIS, C.J., WILLIAMS, STEWART, GASKINS, and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] This doctrine, now statutorily recognized, provides a method of acquiring utility servitude without formal expropriation proceedings when a utility company has used private property in the public interest and in good faith with the landowner's consent or acquiescence for a period of time. La. R.S. 19:14; St. Julien v. Morgan Louisiana & Texas Railroad Co., 35 La. Ann. 924 (La.1883); Campbell v. Louisiana Intrastate Gas Corporation, 528 So.2d 626 (La.App. 2d Cir.1988).
[2] We note that the plaintiff requested in his petition that a "hold" be placed on service of process as to C. Hood, the landowner. There is no answer in the record from this defendant, and he or she was not released by the summary judgments in favor of CE and Trees.
[3] La. C.C. art. 2317 provides:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
La. C.C. art. 2317.1 now provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
However, this provision was added by Acts 1996, 1st Ex.Sess. No. 1 § 1, effective April 16, 1996. This provision was not in effect at the time the plaintiff was injured in 1994.